**SIGNED THIS: June 7, 2013**

_____
**Mary P. Gorman**
**United States Chief Bankruptcy Judge**
_____

UNITED STATES BANKRUPTCY COURT

CENTRAL DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| In Re | ) | |
| | ) | Case No. 12-71705 |
| JASON A. CANNELL, | ) | |
| | ) | Chapter 7 |
| Debtor. | ) | |
| _____ | ) | |
| | ) | |
| FIRST STATE BANK OF | ) | |
| BLOOMINGTON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Adversary No. 12-07051 |
| | ) | |
| JASON A. CANNELL, | ) | |
| | ) | |
| Defendant. | ) | |

## O P I N I O N

This case is before the Court for decision after trial of an adversary complaint filed by First

State Bank of Bloomington objecting to the discharge of the Debtor, Jason A. Cannell. The Court

finds that, while subject to a citation to discover assets that prohibited him from transferring his

property and within one year of the filing of this case, the Debtor transferred more than $18,000 to

his then-fiancee with the intent to hinder and delay the Bank in its efforts to collect a state court

judgment. Accordingly, the Debtor's discharge must be denied.

## I. FACTS

The Debtor, Jason A. Cannell ("Debtor"), has been a practicing attorney in Bloomington,

Illinois, since 1992. In January 2009, the Debtor's law firm, Cannell & Maulson, P.C., executed a

promissory note in the principal amount of $50,000 in favor of First State Bank of Bloomington

("Bank") and the Debtor personally guaranteed the note. On October 19, 2010, the Bank sued the

Debtor and Cannell & Maulson, P.C., to collect on the note. The Bank obtained a judgment on

August 23, 2011, in the amount of $19,391.93 plus costs.

Post-judgment, the Bank instituted supplementary proceedings in state court in order to locate

assets of the Debtor and Cannell & Maulson, P.C., that could be used to satisfy the judgment. On

September 14, 2011, the Debtor was personally served with a citation to discover assets. Also in

September 2011, the Bank served third-party citations on PNC Bank, Busey Bank ("Busey"), and

Heartland Bank & Trust Co. ("Heartland") because it believed those entities may have been holding

assets of the Debtor or Cannell & Maulson, P.C. On April 25, 2012, the Bank served a citation on

Cannell Law Firm, P.C., an entity which the Debtor had incorporated in January 2010. The citation

on Cannell Law Firm, P.C., was dismissed on June 5, 2012. Each of the citations contained the

following language:

YOU ARE PROHIBITED from making or allowing any transfer or other disposition of, or interfering with, any property not exempt from execution or garnishment belonging to the judgment debtor or to which he may be entitled or which may be acquired by or become due to him and from paying over or otherwise disposing of any money not so exempt, which is due or becomes due to him, until the further order of court or termination of the proceedings.

The Debtor filed a voluntary Chapter 7 case on July 30, 2012. The Bank filed this adversary proceeding against the Debtor on November 5, 2012. Count I of the complaint seeks to deny the Debtor's discharge on the basis that the Debtor intended to hinder, delay, or defraud the Bank by transferring or concealing his property within one year of filing. Count II objects to the Debtor's discharge on the basis that the Debtor unjustifiably concealed, destroyed, or failed to keep books and records from which his financial condition or business transactions could be ascertained. At the commencement of the trial, the Bank moved to dismiss Count II, and proceeded only on Count I.

The Debtor testified at trial that he had held a personal bank account, either jointly or individually, from 1992 until 2011. In January 2010, the Debtor opened a joint account at Busey with his then-fiancee, Tonya Howell, when they began living together.[1] The Debtor and Mrs. Cannell both testified that they closed the joint Busey account in August 2011. The Debtor said he was concerned that the account would be frozen following the state court judgment in the Bank's favor, thus preventing him from making court-ordered child support payments to his ex-wife. Additionally, the Debtor worried that if the account was frozen, it would negatively impact Mrs. Cannell's credit rating.

The Debtor also had an individual bank account at Heartland that he closed in September 2011 shortly after he was served with the citation to discover assets. The Debtor's stated reason for

---

[1] The Debtor and Tonya Howell married on December 31, 2012, at which point she took the Debtor's surname. For clarity's sake, this Opinion will hereafter refer to her as "Mrs. Cannell."

closing the Heartland account was that he was concerned that it would be frozen and thus prevent

him from making his required child support payments. After closing the joint Busey account and his

individual Heartland account, the Debtor did not have any personal bank account until about a month

after he filed his Chapter 7 case.

After closing the Heartland and Busey accounts, the Debtor testified that he took both cash

and check distributions from Cannell Law Firm, P.C. The Debtor signed over his checks to Mrs.

Cannell, who deposited them in her individual account at Heartland, which she opened in September

2011. According to Mrs. Cannell's Heartland account statements, the Debtor made the following

transfers to the account: $1500 on September 30, 2011; $1500 on November 8, 2011; $1500 on

December 1, 2011; $3,024.14 on January 5, 2012; $3000 on February 24, 2012; $3000 on April 19,

2012; $3500 on May 31, 2012, and; $1500 on July 25, 2012. The Debtor and Mrs. Cannell both

testified that these transfers were made pursuant to an agreement they had with each other that the

Debtor would contribute monthly to their joint living expenses. Further, the Debtor's and Mrs.

Cannell's unrebutted testimony was that this arrangement began in January 2010, when they first

began living together.[2] The Heartland account statements admitted into evidence reflect expenditures

consistent with their testimony that the transfers from September 2011 through July 2012 were used

for ordinary living expenses such as rent, utilities, and food.

The Debtor acknowledged that he never sought authority from the Illinois state court to make

---

[2] Neither party to this adversary proceeding introduced any account statements for the Debtor's and Mrs. Cannell's joint account at Busey, covering the period from January 2010 through the time the account was closed in August 2011, that would have substantiated the Debtor's and Mrs. Cannell's testimony on this point. But at the same time, there was never any dispute that the arrangement began in 2010 and continued through the time that the Debtor filed his Chapter 7 petition.

the transfers to Mrs. Cannell's Heartland account, despite having been personally served with a citation to discover assets on September 14, 2011. Similarly, the Cannell Law Firm, P.C., never sought permission from the state court to make transfers to the Debtor or to Mrs. Cannell between April 25, 2012, and June 5, 2012, when it was subject to a third-party citation to discover assets.

In the Statement of Financial Affairs the Debtor filed with his voluntary petition on July 30, 2012, the Debtor disclosed none of the above-mentioned payments to Mrs. Cannell. The Debtor's Schedule I includes the following statement: "Debtor and his fiancee have paid their joint living expenses from her bank account, since the Debtor was forced to close his bank account due to outstanding judgments and IRS liens." The Debtor filed an Amended Statement of Financial Affairs on December 4, 2012. Among other things, the Amended Statement of Financial Affairs added at paragraph three, which asks for information about payments to creditors : "Reg. household expenses paid by fiancee." The amount of the transfers shown as having been made to his fiancee and the amount disclosed as still owing to her were both listed as "$0.00."

After the trial, the Debtor filed a Supplement to Closing Argument. In the Supplement, the Debtor emphasized that the transfers to Mrs. Cannell were adequately disclosed in Schedule I. The Debtor also requested that the transcript of the Debtor's §341 meeting be admitted into evidence, which the Debtor said would establish that the transfers to Mrs. Cannell were disclosed at that meeting and discussed in detail. A copy of the transcript itself was not attached to the Supplement. At a later hearing, the Bank objected to admission of the transcript, and the Debtor's request to admit the transcript was denied.

The parties presented arguments and legal authority at the conclusion of the trial. This matter is ready for decision.

## II. JURISDICTION

The Court has jurisdiction over this matter pursuant to 28 U.S.C. §1334. An objection to

discharge is a core proceeding under 28 U.S.C. §157(b)(2)(J).

## III. ANALYSIS

The Bank seeks a denial of the Debtor's discharge based on 11 U.S.C. §727(a)(2)(A) which

provides, in part:

> (a) The court shall grant the debtor a discharge, unless
>
>     . . .
>
>     (2) the debtor, with intent to hinder, delay, or defraud a creditor or
>     an officer of the estate charged with custody of property under this
>     title, has transferred, removed, destroyed, mutilated, or concealed, or
>     has permitted to be transferred, removed, destroyed, mutilated, or
>     concealed
>
>         (A) property of the debtor, within one year before the
>         date of the filing of the petition . . . .

11 U.S.C. §727(a)(2)(A).

Under this provision, the Bank must prove by a preponderance of the evidence that (1) the

Debtor transferred, removed, destroyed, mutilated, or concealed his property, (2) within one year

before the date of the filing of the petition, (3) with the intent to hinder, delay, or defraud a creditor.

*See In re Kontrick*, 295 F.3d 724, 736 (7th Cir. 2002), *aff'd sub nom. Kontrick v. Ryan*, 540 U.S. 443

(2004).

The Debtor concedes that he transferred property to Mrs. Cannell within one year of the date

of filing his voluntary Chapter 7 petition, so the only issue in dispute is whether the Debtor did so

with the intent to hinder, delay, or defraud the Bank. The party objecting to discharge has the burden

of proving the debtor's actual intent to hinder, delay, or defraud a creditor. *See Clean Cut Tree Serv.,*

*Inc. v. Costello* (*In re Costello*), 299 B.R. 882, 894 (Bankr. N.D. Ill. 2003). Actual intent may be

proved by direct evidence, such as an admission, or by circumstantial evidence or inferences drawn

from a debtor's course of conduct. *See Kontrick*, 295 F.3d at 736-37; *Costello*, 299 B.R. at 895.

The Bankruptcy Code does not define what it means to "hinder" or "delay" a creditor. One

court has said that to "hinder" refers to conduct that impedes or obstructs a creditor. *Crews v. First*

*Colony Life Ins. Co.* (*In re Barker*), 168 B.R. 773, 779 (Bankr. M.D. Fla. 1994). To "delay" generally

refers to putting off to a future time, or to postpone. Webster's New World College Dictionary 381

(4th ed. 2002). To be denied a discharge, a debtor's intent need not rise to the level of intending to

"defraud" a creditor; mere intent to "hinder" or "delay" a creditor is sufficient. *Smiley v. First Nat'l*

*Bank of Belleville* (*In re Smiley*), 864 F.2d 562, 568-69 (7th Cir. 1989); *see also First Beverly Bank*

*v. Adeeb* (*In re Adeeb*), 787 F.2d 1339, 1343 (9th Cir. 1986); *United Mortg. Corp. v. Mathern (In*

*re Mathern)*, 137 B.R. 311, 326 (Bankr. D. Minn. 1992) (noting the disjunctive phrasing of

§727(a)(2)). Further, there is no requirement that the creditor *actually* has been hindered, delayed,

or defrauded. 11 U.S.C. §727(a)(2)(A); *Smiley*, 864 F.2d at 569.

Here, the transfers were generally for ordinary living expenses, which would not normally

be considered to have been made in fraud of creditors or with the intent to hinder or delay creditors.

To the contrary, the transfers were made so the Debtor could eat and have a place to live. But, many

of the transfers were made after the Debtor was served with a citation to discover assets.

Accordingly, the analysis becomes more complex, and this Court's decision must be based, in part,

on the limits on transfer created by the service of a citation to discover assets under Illinois law.

### A. The law of citations to discover assets in Illinois.

After the Bank obtained its state court judgment on August 23, 2011, the Bank instituted supplementary proceedings pursuant to the Illinois Code of Civil Procedure. *See* 735 ILCS 5/2-1402. These proceedings allow a judgment creditor such as the Bank to "[examine] the judgment debtor or any other person to discover assets or income of the debtor not exempt from the enforcement of the judgment . . . ." 735 ILCS 5/2-1402(a). The procedural mechanism used for this purpose commonly is known as a citation to discover assets.

When a judgment creditor properly serves a judgment debtor with a citation, a lien for the judgment or the balance due on the judgment instantaneously attaches to the debtor's nonexempt personal property. *See* 735 ILCS 5/2-1402(m). Not only does the lien attach to all nonexempt personal property then in the judgment debtor's possession or control, but also to all such property that the debtor later acquires or that comes due to him, up to the point of the citation's disposition. 735 ILCS 5/2-1402(m)(1). The lien attaches to tangible and intangible property. *See* 735 ILCS 5/2-1402(m); *Taylor v. Millikin Nat'l Bank* (*In re Dean*), 80 B.R. 932, 934 (Bankr. C.D. Ill. 1987). The lien also is perfected immediately upon service of the citation. *See Cacok v. Covington*, 111 F.3d 52, 54 (7th Cir. 1997); *West Bend Mut. Ins. Co. v. Belmont State Corp.*, 2010 WL 5419061, at *6 (N.D. Ill. Dec. 23, 2010).

A judgment creditor also may choose to serve a citation on a third party that is in possession or control of the judgment debtor's property. 735 ILCS 5/2-1402(m)(2). Just as if the citation was served on the judgment debtor, the lien attaches to tangible and intangible nonexempt personal

property of the judgment debtor that the third party is holding or may later acquire. *See id.* Again, the lien is perfected instantly upon service. *Cacok*, 111 F.3d at 54.

When the judgment debtor or a third party is served with a citation, that person or entity generally is prohibited from making or allowing a transfer or disposition of the judgment debtor's nonexempt personal property.[3] *See* 735 ILCS 5/2-1402(f)(1). The citation respondent thus must hold the judgment debtor's property in status quo until the judgment creditor's rights can be determined. *Bank of Aspen v. Fox Cartage, Inc.*, 490 N.E.2d 145, 148 (Ill. App. Ct. 1986); *Vendo Co. v. Stoner*, 438 N.E.2d 933, 938 (Ill. App. Ct. 1982). Notwithstanding these strictures, a judgment debtor has the right to assert exemptions against certain income or assets at the citation hearing, or to seek a declaration at an earlier date by submitting a written request to the Clerk of the Court. *See* 735 ILCS 5/2-1402(b), (j), (l); *In re Mayer*, 388 B.R. 869, 873-74 (Bankr. N.D. Ill. 2008). In the event that a judgment creditor has served multiple citations, the termination of one citation has no effect on citations that are not concluded. Ill. Sup. Ct. R. 277(g). Failure to obey a citation opens the citation respondent to punishment for contempt. Ill. Sup. Ct. R. 277(h).

**B. The Debtor's transfers to Mrs. Cannell in violation of a pending citation establishes that the Debtor intended to hinder, delay, or defraud the Bank.**

The Debtor was served in person with a citation to discover assets on September 14, 2011. Once he was served with the citation, the Debtor was prohibited from transferring his property or any property that came due to him. *See* 735 ILCS 5/2-1402(f)(1); *Fox Cartage*, 490 N.E.2d at 148.

---

[3] The statutory language is permissive, saying that the citation "may prohibit" the citation respondent from transferring property subject to the citation. 735 ILCS 5/2-1402(f)(1). In this case, each citation the Bank served on the Debtor and third parties contained this prohibition.

Despite the prohibition, the Debtor subsequently made eight transfers of money to Mrs. Cannell, totaling $18,524.14. The Debtor initiated these transfers between September 30, 2011, and July 25, 2012. During that entire period, the Debtor was personally subject to the citation to discover assets.

The amount of the transfers from the Debtor to Mrs. Cannell and the use of that money for living expenses was consistent with the Debtor's and Mrs. Cannell's testimony at trial that they used the money for ordinary living expenses. In addition, the amount of the transfers, which averaged about $1500 per month, was consistent with what the Debtor and Mrs. Cannell testified constituted their arrangement beginning in January 2010, when they began living together. These facts do not, of course, demonstrate the Debtor's intent to hinder, delay, or defraud the Bank. But, they also do not excuse the Debtor's violation of the prohibition against transfers contained in the citation to discover assets served upon him.

The Debtor made the transfers in violation of the citation to discover assets knowing that he was prohibited from making any transfers at all. The Debtor admitted at trial that he never sought state court approval to make transfers of any amount of money to Mrs. Cannell. This is problematic because the citation explicitly barred the Debtor from transferring his nonexempt personal property. Once a judgment debtor is served with a citation to discover assets, the burden rests solely on the judgment debtor to assert exemptions from a citation. *See* 735 ILCS 5/2-1402(b), (l). Moreover, Illinois law provides for a judgment debtor to seek an expedited hearing to exempt income or assets from the citation. *Id.* The fact that the Debtor, a licensed attorney, never made any effort to seek approval of the proposed transfers and never sought to claim an exemption for funds to pay living expenses is evidence of his intent to hinder and delay the Bank.

Equally important as the fact that the Debtor never sought permission from the state court

to make transfers to Mrs. Cannell is the fact the Debtor freely admitted at trial that the reason he

ceased banking in his own name and began transferring money to an account in Mrs. Cannell's name

was that he was trying to avoid having his assets frozen. While there is no obligation for a judgment

debtor to hold a bank account in his own name, the Debtor confirmed at trial that, by closing his

account and transferring money to an account only in Mrs. Cannell's name, he was trying to avoid

the Bank's collection efforts. The Debtor was concerned that holding funds in his own name would

prevent him from making court-ordered child support payments and from paying necessary living

expenses. The Debtor knew that transferring funds to Mrs. Cannell would forestall the Bank's efforts

to collect on its judgment.  The inescapable conclusion that must be drawn from the Debtor's own

testimony is that transferring the funds in violation of the citation was done with the express intent

to hinder and delay the collection efforts of the Bank.

The situation in *Kontrick* was similar, wherein the debtor, while subject to a citation to

discover assets, admitted that he removed his name from the family checking account, leaving his

wife as the only owner and signatory. *Kontrick*, 295 F.3d at 727-28. After that, the debtor simply

deposited his paychecks in the same account. *Id.* at 728. The debtor admitted that the change was

prompted by his desire to prevent creditors, including a former business colleague, from reaching

his assets. *Id.* at 727-28. So, just as the debtor in *Kontrick* was denied a discharge under

§727(a)(2)(A) in light of the direct evidence of his intent to hinder, delay, or defraud his creditors,

the Debtor here also will have his discharge denied.

The Debtor denies having intended to hinder, delay, or defraud the Bank when he made the

transfers to Mrs. Cannell. He points to the fact that his Schedule I, filed on July 30, 2012, says

"Debtor and his fiancee have paid their joint living expenses from her bank account, since the Debtor

was forced to close his bank account due to outstanding judgments and IRS liens." The Debtor also

asserts that he disclosed the transfers during his §341 meeting of creditors.[4] Finally, the Debtor avers

that he adequately disclosed the transfers when he filed his Amended Statement of Financial Affairs

on December 4, 2012. Specifically, the Amended Statement of Financial Affairs says the following

in paragraph three, which pertains to payments to creditors: "Reg. household expenses paid by

fiancee." The amount of the transfers and the amount still owing are listed as "$0.00." The Debtor

says, in short, that the fact that he disclosed, or attempted to disclose, the transfers in the context of

his Chapter 7 case is evidence that he never intended to hinder, delay, or defraud the Bank.

What the Debtor misses, however, is that the Bank's objection to discharge does not turn on

whether the Debtor adequately disclosed the transfers after he filed bankruptcy. What matters is that

the Debtor made or facilitated eight transfers of money, totaling more than $18,000, to Mrs. Cannell

while he was expressly prohibited from doing so. The Debtor admitted that he did this to avoid

having his assets frozen and he knew that this would impede or postpone the Bank's collection

efforts. The fact that the Debtor arguably disclosed the transfers after filing bankruptcy does not

negate the fact that, at the time he made the transfers, the Debtor intended to hinder and delay the

Bank from collecting its judgment.

---

[4] In the Supplement to Closing Argument the Debtor filed after trial, the Debtor requested that the transcript of the §341 meeting be admitted as evidence. The Court explained at the hearing that it was not admissible as substantive evidence as it was hearsay to which no exception applied. *See* Fed. R. Evid. 801(c); Fed. R. Evid. 804(a), (b)(1); Fed. R. Evid. 807. The Debtor conceded that the transcript would not be admissible as substantive evidence, but said it was admissible for the nonhearsay purpose of establishing that the Bank received notice of the existence of the transfers to Mrs. Cannell. The Bank objected to admission of the transcript for any purpose. The request to admit the transcript was denied. Despite the fact that issues were raised at trial about accuracy of the Debtor's disclosures, the extent of the Debtor's after-the-fact disclosures of the prohibited transfers is not determinative of the outcome of this case.

## IV. CONCLUSION

The Debtor transferred over $18,000 to Mrs. Cannell during the one year period before filing this case. These transfers were knowingly made in violation of the prohibition against transfers contained in the citation to discover assets served on the Debtor. The harsh reality of Illinois law is that, when a judgment debtor is served with a citation to discover assets containing the prohibition language, all transfers are prohibited. The safety valve for such debtors is the availability of an expedited hearing to claim income and assets exempt. Here, the Debtor, an attorney, sought no relief from the state court and ignored the transfer prohibitions contained in the citation to discover assets. The transfers the Debtor made after being served were made with the intent to hinder and delay the Bank. The Bank has met its burden of proof under §727(a)(2)(A). The Debtor's discharge will be denied.

This Opinion is to serve as Findings of Fact and Conclusions of Law pursuant to Rule 7052 of the Rules of Bankruptcy Procedure.

See written Order.

###